The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes. The appealing party has shown good ground to reconsider the evidence. By Order dated February 10, 1997, the Commission in its discretion reopened the record to receive further evidence and allowed the taking of the deposition testimony of Dr. Randy O. Kritzer. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. At the time of the alleged injury by accident, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the defendant-employer and the plaintiff-employee.
3. Aetna Casualty Surety Company was the carrier on the risk.
4. The date of the alleged injury was January 10, 1995.
5. Plaintiff's average weekly wage on January 10, 1995 was $400.00.
6. The parties stipulated into evidence the following medical records and reports:
(a) Randolph Memorial Hospital Emergency Room (3 pages);
(b) Dr. Al Blase (3 pages);
(c) Dr. Sukwant Walha (1 page);
(d) Randleman Medical Center (2 pages);
(e) Randolph Hospital, Inc. Outpatient Services (9 pages);
(f) Wesley Long Community General Hospital (7 pages);
(g) Dr. Randy O. Kritzer (20 pages);
 (h) Industrial Commission Form 25R, Dr. Randy O. Kritzer, dated September 19, 1995 (1 page).
7. In addition, the parties stipulated into evidence the plaintiff's Answers to Interrogatories and Request for Production of Documents and plaintiff's recorded statement.
8. The parties on April 1, 1997 further stipulated to the deposition of Dr. Randy O. Kritzer taken on April 1, 1997.
* * * * * * * * * * *
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. On December 4, 1994, plaintiff was hired by defendant-employer as a talley operator. Defendant-employer is a manufacturer of corrugated paper board for use in making boxes. Defendant-employer began its operations in December, 1994. Plaintiff's job was to count stacks of corrugated paper board and restack them prior to being banded as they came past her work station on a conveyor. In performing her job, the plaintiff had to push, lift, handle and stack the sheets of corrugated paper board.
2. In late December 1994, the plaintiff began having pain in her lower back. This pain, at first, did not require treatment or affect her ability to perform her assigned job duties.
3. As of January 10, 1995, the defendants' plant had been in operation slightly more than one month. The conveyor system which moved stacks of paper board by the plaintiff's work station had been recently installed and the control panel for the stacker was not functioning properly. The stacking of paper board on this occasion was being done manually which occasionally caused individual pieces of paper board in a stack to misalign as they came past the plaintiff's work station.
4. The plaintiff's work station was at a location where the conveyor makes a 90 degree turn. While the plaintiff was working on January 10, 1995, one such misaligned stack of paper board got hung up at the 90 degree turn of the conveyor.
5. If stacks of paper board were allowed to remain hung up at the 90 degree turn, the entire line would have to shut down. In order to avoid a shutdown and free the stack, plaintiff stepped onto the rail of the conveyor and pushed the stack with her hands, shoulder, and hips in order to move the entire stack at once and not push the top boards off the stack.
6. As she completed this operation, plaintiff stepped down from the rail and as she did so she felt a sudden sharp pain in her low back.
7. The plaintiff on the following day reported this incident to her immediate supervisor, Joe Parker, who in turn reported it to Diane Goins, who at that time was the employee of the defendant responsible for processing workers' compensation claims, including the preparation of I.C. Form 19. Mr. Parker was advised by Ms. Goins that she had no accident report forms at that time.
8. Plaintiff continued to work through January 17, 1995, and on the evening of January 17, 1995, she called Mr. Parker and reported to him that she had gotten worse and was unable to work. On the morning of January 18, 1995, she sought and received treatment at the emergency room of Randolph Hospital.
9. Plaintiff sought treatment the next day from Dr. Sukhwant Walha. Dr. Walha treated her conservatively with drugs and physical therapy with no improvement. During this same period of time, she was also being treated chiropractically by Dr. Al Blase. Dr. Blase referred her for an MRI which was performed on March 3, 1995 and which was positive for an L4-5 disc herniation on the left. He recommended that the plaintiff see a neurosurgeon. On March 17, 1995, she was first seen by Dr. Randy O. Kritzer, who is a neurosurgeon.
10. Dr. Kritzer recommended further conservative therapy. However, by March 30, 1995, plaintiff's condition had not improved and Dr. Kritzer ordered a myelogram which was performed on April 17, 1995 and which revealed mild to moderate hypertrophic degenerative changes, to wit; a laterally herniated disc at L4-L5 and a centrally bulged disc at L5-S1.
11. On May 18, 1995, Dr. Kritzer performed a left pericutaneous endoscopic transforaminal discectomy with discectomy nucleation and thereafter followed the plaintiff postoperatively until August 18, 1995 at which time she was released by Dr. Kritzer to return as needed.
12. While under the care of Dr. Walha, the plaintiff was returned to light duty and worked one day and part of a second day for the employer. After her surgery, Dr. Kritzer returned her to regular work on July 3, 1995 with instructions to work four hours per day the first week, six hours per day the second week, and to begin working eight hours per day the third week.
13. Following her release by Dr. Kritzer, he submitted an I.C. Form 25R wherein he expressed the opinion that the plaintiff has a fifteen percent permanent partial impairment of the back.
14. Plaintiff's back condition which required surgery was causally related to the injury by accident which occurred on January 10, 1995.
15. Plaintiff was out of work with defendant-employer from January 18, 1995 through July 17, 1995, when she resigned, with the exception of two days when she attempted to return to light duty work and an additional one and one-fourth weeks between July 3 and July 17, 1995.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On January 10, 1995, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant in that she sustained a specific traumatic incident of the work assigned. N.C.G.S. § 97-2(6).
2. As a result of the compensable injury, plaintiff is entitled to temporary total disability compensation from January 18, 1995 to July 17, 1995 at a compensation rate of $266.68 per week. N.C.G.S. § 97-29.
3. Plaintiff is entitled to permanent partial disability compensation in the amount of $266.68 per week for 45 weeks as a result of her compensable injury. N.C.G.S. § 97-31(23).
4. Defendants shall pay all of plaintiff's medical bills as a result of her compensable injury which occurred on January 10, 1995.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay plaintiff temporary total disability compensation from January 18, 1995 to July 17, 1995 at a compensation rate of $266.68 per week. This amount has accrued and shall be paid in a lump sum, subject to the attorney fee below.
2. Defendants shall pay plaintiff permanent partial disability compensation in the amount of $266.68 per week for 45 weeks as a result of her compensable injury. This amount has accrued and shall be paid in a lump sum, subject to the attorney fee below.
3. Defendants are entitled to a deduction for all wages earned by plaintiff during the period of January 18, 1995 to July 17, 1995.
4. Defendants shall pay all of plaintiff's medical bills as a result of her compensable injury which occurred on January 10, 1995.
5. Plaintiff's attorney is hereby APPROVED to receive 25% of the award herein awarded to plaintiff. This fee shall be sent directly to plaintiff's counsel.
6. Defendants shall pay costs.
 S/ _____________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ ______________________ LAURA K. MAVRETIC COMMISSIONER
S/ ______________________ BERNADINE S. BALLANCE COMMISSIONER
CMV/cnp/rst 4/9/97